RECEIVED MAY 21 2009 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF MISSISSIPPI

FILED MAY 21 2009 DAVID CREWS, CLERK BY_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ROGER B. ROBERSON
Plaintiff

vs.

AMERICAN FINANCIAL RESOURCES, INC.
A New Jersey Corporation
Defendant

Civil Action No. 2:09CV087-P-S

Jury Trial Demanded

## COMPLAINT

Action by BORROWER against MORTGAGE LENDER for compensatory, statutory and punitive damages for breach of contract, for tortious breach of contract, for breach of fiduciary duty, and for other relief and other causes of action.

### I. PARTIES

1. Plaintiff is an adult resident citizen of Desoto County, Mississippi.

2. Defendant is a corporation, incorporated in and having its principal place of business in New Jersey, which is licensed to do business in the State of Mississippi.

### II. JURISDICTION & VENUE

3. There is complete diversity of citizenship between the parties (28 USC 1332(a)).

4. Defendant has entered into a contract with a resident of this state to be performed

1

in whole or in part in this state, has committed a tort in whole or in part in this State against a resident of this State, and has done business and performed work and/or services in this State.

5. A substantial alleged act occurred in this District and Division and a substantial event that caused the loss occurred in this District and Division.

6. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 (28 USC 1332(b)).

### III. FACTS.

7. On or about November 21, 2008, Plaintiff refinanced his home through a loan from Defendant. Plaintiff executed a Deed of Trust as security for the new loan.

8. Pursuant to the parties' agreement, Plaintiff would repay Defendant in monthly installments. A specified portion of each monthly installment was to be deposited in an escrow account. The funds in the escrow account would be used by Defendant to pay Plaintiff's mortgage insurance, homeowners insurance, and property taxes.

9. Pursuant to the parties' agreement, a reserve amount equivalent to five months of homeowners insurance was deposited with Defendant, to be paid directly to Plaintiff's homeowners insurance company, Nationwide Mutual Fire Insurance Company serviced through Avant Insurance Agency ("Nationwide"), at closing. A reserve amount equivalent to three months of property taxes was similarly deposited with Defendant.

10. Defendant kept these reserve funds, as well as the portion of Plaintiff's monthly payment that was designated for the escrow account, but never disbursed any money to Nationwide or to the tax collector.

11. As a result of Defendant's nonpayment, and unbeknownst to Plaintiff, Plaintiff's homeowners insurance was cancelled as of December 18, 2008, and his property taxes became delinquent as of February 1, 2009.

12. Defendant was immediately aware that Plaintiff's homeowners insurance with Nationwide had been cancelled due to nonpayment on December 18, 2008. Approximately one week later, Defendant substituted Balboa Insurance Group ("Balboa") as "lender-placed" insurance without Plaintiff's knowledge or consent. Due to this change, and unbeknownst to Plaintiff, Plaintiff's annual homeowners insurance premium increased by 65%. Defendant continued to collect this money from Plaintiff, who believed he was paying for coverage with Nationwide.

13. On or about March 9, 2009, Plaintiff's washing machine malfunctioned, causing water damage to his home of a type that would have been covered by his homeowners insurance policy with Nationwide. When Plaintiff contacted Nationwide to make a claim, he was informed that the policy had been cancelled due to nonpayment, and the claim was denied for lack of coverage.

14. Several days later, Plaintiff received a notice from the DeSoto County Tax Collector informing him that his home was subject to tax sale for his property tax delinquency.

15. Plaintiff, and others acting on Plaintiff's behalf, contacted Defendant repeatedly regarding the nonpayment. Defendant responded with varying false and/or conflicting statements. See Exhibit "A" hereto.

16. Defendant finally paid the property taxes on April 28, 2009, nearly three months late, and after additional interest had accrued thereon.

17. Defendant intentionally retained, for its own use, funds designated for payment of Plaintiff's property taxes and homeowners insurance. Defendant intentionally refused to disburse these funds as agreed.

18. Plaintiff has suffered loss as a result of Defendant's misconduct, as itemized in Exhibit "B" hereto.

IV. CAUSES OF ACTION.

18. Breach of Contract.

Plaintiff and Defendant entered into a valid and binding written contract. Defendant has violated the terms of the contract, and Plaintiff has suffered loss as a result.

For breach of contract, Defendant is liable to Plaintiff for compensatory damages, for pre-judgment interest and for costs.

19. <u>Tortious Breach of Contract</u>.

Defendant, in intentionally refusing to disburse funds in violation of the contract, acted with reckless disregard for Plaintiff's rights under the contract. Defendant's breach was accompanied by flimsy excuses and was motivated by Defendant's opportunity to preserve cash flow in the present stressed financial environment. Defendant's tortious breach was also accompanied by fraud, because, unbeknownst to Plaintiff, Defendant substituted a different insurance company and nearly doubled Plaintiff's insurance premium.

For such misconduct, Defendant is liable to Plaintiff for compensatory damages, for punitive damages, for reasonable legal fees and for costs.

20. <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Defendant intentionally and wrongfully retained funds to which it was not entitled and intentionally failed to disburse these funds as agreed. Defendant has failed to exercise faithfulness of the agreed purpose of the contract between the parties, a purpose which was consistent with Plaintiff's justified expectations. Defendant's misconduct constitutes bad faith with regard to the performance of the parties' agreement.

For such misconduct, Defendant is liable to Plaintiff for compensatory damages, for pre-judgment interest and for costs.

21. <u>Negligence</u>

As mortgagor and as trustee of Plaintiff's escrow account, Defendant owed Plaintiff a duty of diligence and care. That included the duty to exercise that degree of care and diligence

which a reasonable and prudent mortgagor and trustee would ordinarily exercise. Defendant has breached that duty. Plaintiff's loss was a foreseeable result of Defendant's breach.

For such misconduct, Defendant is liable to Plaintiff for compensatory damages and for costs.

22.   Gross Negligence

Defendant intentionally and wrongfully retained funds to which it was not entitled and intentionally refused to disburse these funds as agreed. Defendant did so with a reckless indifference to the consequences to Plaintiff, and exerted no effort to avoid those consequences.

For such misconduct, Defendant is liable to Plaintiff for compensatory damages, for punitive damages, for reasonable legal fees and for costs.

23.   Negligence Per Se

Plaintiff, as a borrower who obtained a consumer mortgage from a company required to be licensed by the Mississippi Department of Banking and Consumer Finance, is a member of the class sought to be protected under Miss. Code Ann. §§ 81-18-1 et seq., the "Mississippi Mortgage Consumer Protection Law." Plaintiff's loss is of a type sought to be avoided by the statute. Defendant has violated the statute, namely § 81-18-27 and § 81-18-36. These violations proximately caused Plaintiff's loss.

For negligence per se, Defendant is liable to Plaintiff for compensatory damages and for costs.

24. <u>Breach of Fiduciary Duty.</u>

The agreement between Plaintiff and Defendant as to the handling and disbursement of Plaintiff's escrow funds gave rise to a fiduciary relationship between the parties. Plaintiff trusted in and relied on Defendant to perform the duties assumed by it under the escrow agreement, including the duty to timely disburse funds for Plaintiff's property taxes and homeowners insurance, the duty to act in accordance with Plaintiff's best interest with regard to escrow funds, and the duty of loyalty and good faith in the collection, maintenance and disbursement of Plaintiff's escrow funds. Defendant has breached these duties and has acted contrary to the terms of the escrow agreement, to Plaintiff's detriment. Defendant's breach was intentional and committed with reckless disregard of the consequences to Plaintiff.

For such misconduct, Defendant is liable to the corporate Plaintiff for compensatory damages, for punitive damages, for legal fees and for costs.

25. <u>Conversion</u>

Defendant wrongfully and intentionally retained and exercised dominion over funds, belonging to Plaintiff and designated for payment to Plaintiff's homeowners insurance company and to the DeSoto County Tax Collector, in a manner inconsistent with Plaintiff's rights and interest. Defendant intended to appropriate the money to itself, in reckless disregard for the consequences to Plaintiff.

For such misconduct, Defendant is liable to Plaintiff for compensatory damages, for punitive damages, for legal fees and for costs.

## V. RELIEF.

Plaintiff respectfully asks the Court for the following relief:

(a)  Judgment against Defendant for compensatory damages in a sum of $19,741.96 or in such amount as the evidence supports and as the jury may award;

(b)  Judgment against Defendant for punitive damages in the sum of $500,000.00 or in such amount as the evidence supports and as the jury may award;

(c)  Award of reasonable legal fees and costs;

(d)  Pre-judgment interest at the legal rate from November 26, 2008; and

(e)  Such other relief as the evidence may support.

## VI. JURY TRIAL DEMANDED

Plaintiff, in accordance with Fed. R. Civ. P. 38(b), hereby demands a jury trial.

Date: May 20th, 2009.

Respectfully submitted,

By: _____
CHRISTIAN GOELDNER (#4876)
PAIGE MCDOWELL (#102362)
BRANDON FLECHAS (#102283)
**Goeldner, Porter & McDowell**
Attorneys for Plaintiff
P.O. Box 1468
Southaven, MS 38671-1468
tel.   (662) 342-7700
fax   (662) 342-7707
e-mail: paige@gpmlawfirm.net

## Roberson v. American Financial Resources - Timeline

| Date | Event |
|---|---|
| 11/19/08 | Insurance premium info and declarations page faxed from Nationwide to Premier Lending |
| 11/20/08 | Invoice for balance of insurance premium from 11/29/08-9/30/09 ($636.37) sent from Nationwide to Premier |
| 11/21/08 | Closing date. |
| 11/29/08 | Payment due to Nationwide for coverage 11/30 - 12/30. |
| 12/11/08 | Warning re: unpaid status sent from Nationwide to AFR |
| 12/11/08 | Nationwide leaves 4 messages with Premier re: nonpayment. No response. |
| 12/17/08 | Nationwide attempts to contact AFR re: nonpayment; AFR puts Nationwide on hold for 30 minutes then cuts off. |
| 12/18/08 | Plaintiff's Nationwide policy cancelled for nonpayment. |
| 12/26/08 | Lender-placed policy with Balboa Insurance Group becomes effective, increasing Plaintiff's annual premium from $823.00 to $1,359.00. |
| January 2009 | Nationwide contacts Kristen Ozemko at AFR re: nonpayment. Kristen states that there was never an escrow account established. |
| 3/9/09 | Plaintiff's home floods.<br><br>Plaintiff's wife calls Nationwide to report claim. Nationwide informs Plaintiff's wife that the policy was cancelled due to nonpayment.<br><br>Plaintiff's wife calls AFR and speaks with Kristen Ozemko. Ozemko assures Plaintiff's wife that AFR had timely paid Nationwide as agreed. Ozemko told Plaintiff's wife to call Nationwide back, because there must be a mistake on Nationwide's part.<br><br>Plaintiff's wife calls Nationwide a second time. Nationwide verifies that no payment has been received from AFR. |
| 3/10/09 | Jeanette Campbell calls AFR on Plaintiff's behalf and speaks with Kristen Ozemko. Ozemko tells Campbell that the Nationwide policy had been paid in full through September 2009 and that Ozemko had proof of same.<br><br>Kristen Ozemko with AFR calls Nationwide to attempt to make payment. Nationwide informs her that they cannot reinstate the policy, and furthermore cannot rewrite the policy until the flood damage is repaired. |
| 3/11/09 | Plaintiff calls AFR and is told to send a fax containing a description of the damage and an estimate to "Laura." Plaintiff sends fax but receives no response.<br><br>Kristen Ozemko with AFR again speaks with Nationwide and is again informed that the existing damage must be repaired before Nationwide can rewrite Plaintiff's policy. Nationwide states that water damage creates potential costly problems in the future if not dealt with immediately.<br><br>Plaintiff also contacts Nationwide and is informed that the policy will not be rewritten until all repairs are made and the property is inspected. |



1

| | |
|---|---|
| 3/14/09 | Plaintiff receives a statement from DeSoto County Tax Collector stating that his property taxes were delinquent as of 2/1/09 and that his home is subject to the August tax sale unless a payment of $351.00 is made. |
| 3/25/09 | Plaintiff speaks to Richard Dubnoff, President/CEO of AFR. Dubnoff is belligerent and denies responsibility, stating that AFR is not responsible for Plaintiff's washing machine malfunctioning. He then says that he will take care of the damage and "make things right." <br><br> AFR informs Plaintiff that Balboa Insurance will inspect the damage and provide an estimate. AFR assures Plaintiff that they will cover all repair costs. |
| 3/26/09 | Rita Riggins, with Mississippi Mortgage Inspection Services for the South, comes to Plaintiff's home to inspect the damage. She tells Plaintiff that Balboa Insurance has a reputation for intentionally low-balling costs of repair. Riggins suggests Plaintiff seek legal counsel. |
| 3/30/09 | Adjustor from Balboa inspects damage to Plaintiff's home and provides a sham estimate |
| 4/1/09 | Plaintiff's wife calls "Laura," to whom Plaintiff sent the 3/11/09 fax, regarding the information contained in that fax. Laura tells Plaintiff's wife that Laura works for Homeowners of America Insurance Co. and that they do not provide coverage in Mississippi. |
| 4/8/09 | Tom Hudgens from Armil Construction provides comprehensive damage estimate |
| 4/10/09 | Plaintiff calls AFR about the delinquency notice she received regarding the property taxes. AFR assures Plaintiff the taxes had been paid. |
| 4/17/09 | Plaintiff receives a second delinquency notice from DeSoto County Tax Collector. Balance due is now $354.44. <br><br> Plaintiff calls AFR and speaks with Kristen Ozemko. Ozemko tells Plaintiff the taxes have already been paid. Plaintiff asks Ozemko how she knew how much to pay. He is put on hold for fifteen minutes, then transferred to Theresa Wise. Wise tells Plaintiff that AFR received a bill for $166.00, which had already been paid by AFR. |
| 4/28/09 | Defendant pays Plaintiff's property taxes, nearly three months late, in a different amount than previously stated to Plaintiff and after additional interest has accrued. |

2

# Itemization of Loss

Date: 5/20/2009

**Compensatory**

| | | |
|---|---|---|
| Cost of Repair | $ | 14,352.00 |
| Value of time invested in claim | $ | 1,281.00 |
| Cost of Expert Reports and Testimony | $ | 250.00 |
| Moving Costs | $ | 3,000.00 |
| Storage Costs | $ | 300.00 |
| Funds designated for hazard insurance and taxes | $ | 558.96 |

$95.74/mo. for 5 months:   $ 478.70
Insurance reserve:          $ 342.90
Tax reserve:                $  81.48
Less timely payment amt
for property tax:           $ 344.12

| | | |
|---|---|---|
| Sub-Total | $ | 19,741.96 |

**Other**

| | | |
|---|---|---|
| Punitive Damages | $ | 500,000.00 |
| Pre-Judgment Interest | $ | 757.23 |

8% per year from date of Loss
From 11-26-08 to 5-20-09
Days         175
Per diem     $4.33

| | | |
|---|---|---|
| Court Costs | $ | 400.00 |

Filing Fee          $350.00
Service of Process  $50.00

| | | |
|---|---|---|
| Legal Fees | $ | 7,430.00 |
| Sub-Total | $ | 508,587.23 |
| **Grand-Total** | $ | **528,329.19** |



EXHIBIT B